**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **RICKY WILLIAMS,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | No. 3:13-CV-4604-BF |
| § | |
| **CAROLYN W. COLVIN,** § | |
| **Acting Commissioner of Social Security,** § | |
| § | |
| **Defendant.** § | |

## MEMORANDUM OPINION & ORDER

Plaintiff ("Plaintiff") brings this action for judicial review of the Commissioner of Social Security's ("Commissioner's") final decision denying his claim for supplemental security income under Title XVI of the Social Security Act pursuant to 42 U.S.C. § 405(g). For the following reasons, the final decision of the Commissioner is REVERSED AND REMANDED for proceedings consistent with this opinion.

## Background

Plaintiff alleges that he is disabled due to a variety of ailments, including back and left knee pain, depression, hypertension, a history of substance abuse, and a stab wound to his abdomen. *See* Tr. [D.E. 11-3 at 19]. After his application for supplemental security income was denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). That hearing was held on December 20, 2010. Tr. [D.E. 11-3 at 32]. At the time of the hearing, Plaintiff was 51 years old. *See id.* [D.E. 11-3 at 36]. Plaintiff has a high school education. *See id.* [D.E. 11-3 at 36]. Plaintiff has no past relevant work. *See id.* [D.E.11-3 at 49]. Plaintiff alleges an onset of disability since January 1, 2001. *See id.* [D.E.11-3 at 13].

ALJ Rita R. Carroll ("ALJ Carroll") posed to the vocational expert ("VE") a hypothetical individual with Plaintiff's age, education, and work experience, who was limited to lifting 50 pounds occasionally, 25 pounds frequently, standing and walking six hours a day, sitting six hours a day, frequent postural maneuvers, and simple work. *See id.* [D.E. 11-3 at 50]. In response to the ALJ's hypothetical, the VE testified that Plaintiff could perform the tasks of a cleaner/housekeeper, a laundry worker, and a hand packager. *See id.* [D.E.11-3 at 50]. On January 12, 2011, ALJ Carroll issued her decision finding that while Plaintiff has the severe impairments of degenerative disc disease, depression, and a polysubstance abuse disorder, Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). *See id.* [D.E.11-4 at 9]. ALJ Carroll determined that Plaintiff has the residual functional capacity ("RFC") to lift/carry 25 pounds frequently and 50 pounds occasionally, stand/walk 6 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday. *See id.* [D.E.11-4 at 10]. ALJ Carroll found that Plaintiff could frequently climb, stoop, kneel, crouch, crawl, and balance, and would be able to perform the demands of simple work. *See id.* [D.E.11-4 at 10]. Considering Plaintiff's age, education, work experience, and RFC, ALJ Carroll determined that Plaintiff could perform the jobs listed by the VE, namely that of a cleaner, a laundry worker, and a hand packer. *See id.* [D.E.11-4 at 13-14].

On September 23, 2011, the Appeals Council of the Social Security Administration issued an order vacating and remanding for further proceedings ALJ Carroll's hearing decision. *See id.* [D.E.11-4 at 20]. The Appeals Council determined that ALJ Carroll's decision does not contain an adequate evaluation of a treating source's opinion or accurately consider a non-examining medical expert's opinion from the hearing. *See id.* [D.E.11-4 at 20]. The Appeals Council noted that in June

of 2010, Dr. Kristin Grable opined that Plaintiff had a major depressive disorder, recurrent and severe with psychotic features and assessed a global assessment of functioning ("GAF") of 42. *See id.* [D.E.11-4 at 20]. The Appeals Council further noted that Dr. Grable's report also indicated diagnoses of alcohol abuse, cocaine dependence and cannabis dependence, but a treatment note on the same day indicated that cannabis was last used 2 years ago and cocaine was last used four years ago. *See id.* [D.E.11-4 at 20]. The Appeals Council found that ALJ Carroll's hearing decision implies that Dr. Grable did not consider drug and alcohol dependence but a medical source statement received by the Appeals Council completed by Dr. Grable in December 2010 indicates a substantial loss in abilities, that Plaintiff's cocaine dependence was in remission, and includes a diagnosis of alcohol abuse versus dependence. *See id.* [D.E.11-4 at 20]. The Appeals Council found that the hearing decision is unclear regarding Plaintiff's substance and alcohol use by stating that Plaintiff does not meet Listing 12.09 and inconsistently stating that the medical expert testified that in the absence of substance abuse, Plaintiff can perform simple work. *See id.* [D.E.11-4 at 20].

The Appeals Council instructed that upon remand, the ALJ shall: (1) obtain updated treatment evidence; (2) obtain evidence from a medical expert to clarify the nature and severity of Plaintiff's impairments and comment on the DA&A provisions; (3) further evaluate Plaintiff's mental impairments in accordance with the special technique described in 20 CFR 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 416.920a(c); (4) give further consideration of Plaintiff's maximum RFC during the entire period at issue and provide rationale with specific references to the evidence of record in support of assessed limitations and in doing so, evaluate the treating and non-treating source opinions pursuant to the provisions of 20 CFR

416.927 and Social Security Rulings 96-2p and 96-5p and non-examining source opinions in accordance with the provisions of 20 CFR 416.927(f) and Social Security Ruling 96-6p, and explain the weight given to such opinion evidence; and (5) determine whether Plaintiff is disabled taking into consideration all of the impairments, including drug addiction and alcoholism. *See id.* [D.E.11-4 at 21]. Further, the Appeals Council instructed that in determining whether DA&A is material, the ALJ shall decide: (1) whether any of the disabling physical or mental limitations would remain if the claimant stopped using drugs or alcohol; and (2) whether any of the remaining limitations would still be disabling. *See id.* [D.E.11-4 at 22].

Upon remand, ALJ Carol K. Bowen ("ALJ Bowen") determined that Plaintiff has the following severe impairments: early degenerative joint disease of the left knee, degenerative disc disease with chronic back pain, history of stab wound to the abdomen, hypertension, major depressive disorder, history of substance induced mood disorder, alcohol abuse, and cocaine dependence in partial remission. *See id.* [D.E.11-3 at 15]. ALJ Bowen determined that Plaintiff's impairments, including the substance use disorders, meet sections 12.04 and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)). *See id.* [D.E.11-3 at 16]. ALJ Bowen determined that if Plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on Plaintiff's ability to perform basic work activities, and therefore, Plaintiff would continue to have a severe impairment or combination of impairments. *See id.* [D.E.11-3 at 17]. ALJ Bowen determined that if Plaintiff stopped the substance use, Plaintiff would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *See id.* [D.E.11-3 at 17].

ALJ Bowen determined that if Plaintiff stopped the substance use, Plaintiff would have the

RFC to perform medium work as defined in 20 CFR 416.967(c) except that he would be limited to: occasionally climbing ladders, ropes, and scaffolds; occasionally pushing and pulling; occasionally stooping; frequently climbing ramps and stairs; and frequently balancing, kneeling, crouching, and crawling. *See id.* [D.E.11-3 at 19]. Further, ALJ Bowen found that Plaintiff should avoid exposure to hazardous machinery and unprotected heights. *See id.* [D.E.11-3 at 19]. Due to Plaintiff's mental impairments, ALJ Bowen determined that Plaintiff would be limited to performing simple, routine, and repetitive tasks in a routine work-setting involving only occasional interaction with the general public. *See id.* [D.E.11-3 at 19]. ALJ Bowen determined that if Plaintiff stopped the substance use, considering his age, education, work experience, and RFC, there would be a significant number of jobs in the national economy that Plaintiff could perform. *See id.* [D.E.11-3 at 22]. Pursuant to a hypothetical posed by ALJ Bowen of an individual with Plaintiff's age, education, work experience, and RFC, and if he stopped the substance abuse, the VE testified that Plaintiff could perform medium exertional jobs of a dishwasher, dining room attendant, and laundry worker. *See id.* [D.E.11-3 at 22]. The VE further testified that if Plaintiff was limited to working at the light exertional level, Plaintiff would be able to perform the occupations of housekeeping cleaner, cafeteria attendant, and photocopy machine operator. *See id.* [D.E.11-3 at 23]. ALJ Bowen concluded that because substance use disorder is a contributing factor material to the determination of disability, Plaintiff has not been disabled within the meaning of the Social Security Act at any time from the date of Plaintiff's application through the date of her decision. *See id.* [D.E.11-3 at 23].

**Legal Standards**

A claimant must prove that he is disabled for purposes of the Social Security Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire*

*v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are that:

> (1) an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings;
>
> (2) an individual who does not have a "severe impairment" will not be found to be disabled;
>
> (3) an individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors;
>
> (4) if an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" will be made; and
>
> (5) if an individual's impairment precludes the individual from performing the work the individual has done in the past, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990) (paraphrasing 20 C.F.R. § 404.1520(b)-(f)).

The burden of proof lies with the claimant to prove disability under the first four steps of the five-step inquiry. *Leggett*, 67 F.3d at 564. The burden of proof shifts to the Commissioner at step

five of the inquiry to prove that other work, aside from the claimant's past work, can be performed by the claimant. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989)). If the Commissioner demonstrates that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits was supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record as a whole to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Absent an error that affects the substantial rights of a party, administrative proceedings do not require "procedural perfection." *Wilder v. Colvin*, No. 3:13-CV-3014-P, 2014 2931884, *5 (N.D. Tex. June 30, 2014) (citing *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012)). Procedural errors affect substantial rights of a party only when the errors "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is required where there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010). Further, "[t]he ALJ is not required to discuss every piece of evidence in the record nor must the ALJ

follow formalistic rules of articulation." *Hunt v. Astrue*, No. 4:12-CV-44-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013).

## Analysis

Among several arguments, Plaintiff contends that the ALJ committed reversible error by not considering the subsection 404.1527 and 416.927 factors before declining to give weight to the opinions of Plaintiff's treating specialist, Dr. Grable. *See* Pl.'s Br. [D.E. 15 at 16]. Plaintiff argues that pursuant to *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000), absent reliable medical evidence from a treating or examining physician controverting Plaintiff's treating specialist, an ALJ may reject the opinion of that treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 CFR 404.1527. *See id.* [D.E. 15 at 16]. Plaintiff argues that ALJ Bowen committed reversible error because she did not consider the six factors set forth in 404.1527(c). *See id.* [D.E. 15 at 16].

The Commissioner contends that the holding in *Newton* is limited to circumstances where the ALJ summarily rejects the opinion of a claimant's treating physician based only on the testimony of a non-specialty medical expert who had not examined the claimant and where the record does not contain competing first-hand medical evidence that supports the ALJ's decision. *See* Def.'s Resp. [D.E. 20 at 16]. The Commissioner observes that in December 2010, Dr. Grable completed a medical assessment of ability to do work-related activities where she noted substantial loss of ability in 11 out of 16 categories. *See id.* [D.E. 20 at 16]. The Commissioner further observes that Dr. Grable noted that Plaintiff had a GAF score of 42 and would be absent from work more than four days a month due to his psychiatric condition. *See id.* [D.E. 20 at 16]. Further, the Commissioner notes that Dr. Grable believed Plaintiff's mental limitations would exist regardless of his substance problems.

8

*See id.* [D.E. 20 at 16]. While acknowledging that the opinion of a treating physician who is familiar with the claimant's medical condition should generally be accorded considerable weight in determining disability and given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic technique nor inconsistent with other substantial evidence, the Commissioner contends that the ALJ is free to assign little or no weight to the opinion of any physician for good cause. *See id.* [D.E. 20 at 17]. The Commissioner argues that there is good cause here because the checklist of clinical signs completed by Dr. Grable identifying the clinical signs of Plaintiff's mental illness is not considered the detailed, clinical diagnostic evidence necessary to support a treating physician's opinion. *See id.* [D.E. 20 at 17]. Further, the Commissioner contends that the ALJ acknowledged that Dr. Grable's opinion adequately reflected Plaintiff's functional limitations when drug and alcohol dependence was considered but found that in the absence of such dependence, Dr. Grable's assessment was not an accurate assessment of Plaintiff's function. *See id.* [D.E. 20 at 17]. The Commissioner points out that the ALJ specifically found that the record reflects that with medication and during periods of even partial sobriety, Plaintiff showed significant improvement in his condition. *See id.* [D.E. 20 at 17].

Furthermore, the Commissioner argues that other evidence in the record does not support Dr. Grable's opinion. *See id.* [D.E. 20 at 17]. For example, the Commissioner points out that in Plaintiff's April 2010 psychiatric examination, Dr. Fletcher noted the following: Plaintiff's speech was clear and easily understood; his thought process showed no looseness of association, circumstantiality, or tangentiality; his responses were appropriate throughout; he was easily communicated with; his thought content showed no delusions, overvalued ideas, obsessions, or illogical thinking; he denied homicidal ideation; while reporting suicidal ideation, he denied a plan

9

or intent; he reported no illicit drug use and consuming alcohol two times per week; his concentration appeared intact; and his judgment and insight appeared fair. *See id.* [D.E. 20 at 18]. Further, the Commissioner notes that Dr. Fletcher diagnosed Plaintiff with a major depressive disorder with psychotic features with a GAF score of 50 and opined that Plaintiff's affective symptoms should improve with treatment. *See id.* [D.E. 20 at 18].

The Commissioner also notes that impartial medical expert, Dr. Felkins observed in December 2010 that the evidence reflected that when Plaintiff was in prison, there were no significant problems and no job restrictions and the record was devoid of significant psychiatric treatment following Plaintiff's 2008 suicide attempt which would support the extreme limitations provided by Dr. Grable. *See id.* [D.E. 20 at 19]. In addition, the Commissioner points out that impartial medical expert, Dr. Simonds testified that based on his review of the medical record, Plaintiff retained the capacity to perform simple work and that he was not significantly limited in his ability to interact with the general public or coworkers. *See id.* [D.E. 20 at 19]. The Commissioner further points out that in May and July of 2010, State agency medical consultants assessed Plaintiff with the ability to understand, remember, and carry out simple instructions, make simple decisions, attend to tasks and concentrate for an extended period, respond appropriately to changes in a routine work setting, and interact adequately with coworkers and supervisors. *See id.* [D.E. 20 at 19].

The Commissioner contends that because the medical consultants made their assessments based on a specialized understanding of psychiatric disorders and a familiarity with the Social Security's adjudicative process, the ALJ gave their assessments, along with the opinion of Dr. Fletcher significant weight. *See id.* [D.E. 20 at 20]. The Commissioner argues that the ALJ correctly found that the evidence lent credence to the fact that Plaintiff's psychiatric impairments were greatly

10

exacerbated by his drug and alcohol abuse. *See id.* [D.E. 20 at 19]. The Commissioner argues that the ALJ properly assigned Dr. Grable's assessment little weight because none of Plaintiff's records, when Plaintiff was not using drugs, contain any findings to support the extreme limitations provided by Dr. Grable. *See id.* [D.E. 20 at 20].

In *Newton v. Apfel*, the Fifth Circuit stated the following:

> [A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527[(c)(1)-(6)].[1]

---

1. 20 C.F.R. § 404.1527(c)(1)-(6) states the following:

(c) How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

    (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

    (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a non-treating source.

> Additionally, if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e).

*Newton*, 209 F.3d at 453. Similar to the facts in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *Id.* at 458. Here, the ALJ rejected the opinions of Plaintiff's treating physician without controverting medical opinion evidence. The Commissioner concedes that Dr. Grable determined that Plaintiff's mental limitations would exist regardless of his substance problems. *See* Def.'s Resp. [D.E. 20 at 16]. Dr. Fletcher, the only examining physician discussed by the ALJ with respect to Plaintiff's mental condition, examined Plaintiff 8 months prior to Dr. Grable's December 2010 assessment. Moreover, his opinion does not controvert Dr. Grable's opinion. The Commissioner argues that it is notable that Dr. Fletcher opined that Plaintiff's affective symptoms should improve with treatment. *See id.* [D.E. 20 at 18]. However, just because Plaintiff's

---

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

symptoms improve with treatment does not mean that they will improve to the point where his mental impairments precluding work cease. It is possible for Plaintiff's mental impairments to improve but Plaintiff still be unable to perform gainful activity. Moreover, in making her arguments, the Commissioner cites *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990) for the position that in certain circumstances, the "ALJ can rely on non-examining physicians' opinions, as long as their findings do not contradict an examining physician." *See* Def.'s Br. [D.E. 20 at 20]. However, the Commissioner is also arguing here that the non-examining medical consultants' opinions contradict that of examining and treating physician, Dr. Grable.

      Contrary to the Commissioner's argument, the ALJ was required under *Newton* to perform a detailed analysis of Dr. Grable's views under the criteria set forth in 20 C.F.R. § 404.1527(c) prior to rejecting her opinion. *See Gittens v. Atrue*, 3:04-CV-2363-L, 2008 WL 631215, at *5 (N.D. Tex. Feb. 29, 2008) ("The magistrate judge [] relies on *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir.1994), for the proposition that the ALJ does not need to specifically discuss all the evidence that supports his or her decision or all the evidence that was rejected. . . . The court [] finds that the ALJ had a duty to explain why these medical opinions from a treating physician were rejected and to conduct the analysis required by 20 C.F.R. § 404.1527(d)(2), and that the magistrate judge's reliance on *Falco* was misplaced."). The ALJ's errors here were not harmless because if he gave more weight to Dr. Grable's opinions, he may have found Plaintiff to be disabled. Thus, Plaintiff has shown prejudice from the ALJ's failure to properly weigh medical opinions. The Court finds that the ALJ's legal errors in considering the medical evidence will necessarily require reconsideration, not only of the medical evidence, but of the remaining issues.

**<u>Conclusion</u>**

For the reasons stated above, the final decision of the Commissioner is REVERSED and REMANDED for proceedings consistent with this opinion.

SO ORDERED, this 27th day of March, 2015.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE